Jane Simkin Smith
Attorney At Law
P.O. Box 1277
Millbrook, New York 12545
845 724 3415
Fax 888-391-5018
jssmith1@optonline.net

October 21, 2014

By ECF

Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *United States v. Ahmed*, et al. 12 CR 661 (S1) (SLT)

Dear Judge Townes:

      This letter is submitted on behalf of defendant Mohamed Yusuf in opposition to the government's October 15, 2014 letter motion to depose prospective witnesses pursuant to Rule 15, Federal Rules of Criminal Procedure, and to offer their testimony in connection with "the anticipated hearing on the defendants' motion to suppress." Counsel for defendants Hashi and Ahmed join in this opposition.

      To start with, the current version of Rule 15 does not provide for the depositions of witnesses in order to preserve their testimony for a pre-trial suppression hearing. The Rule provides only that "A party may move that a prospective witness be deposed in order to preserve testimony **for trial**." (Emphasis added.) While a former version of the rule, Rule 15(e) allowed for use of deposition testimony at "the trial or upon any hearing", that provision has been deleted.[1] We have not located a reported case (and the government cites none) where the government was permitted to obtain the deposition of a foreign witness for use in connection with a suppression or other pre-trial motion hearing.[2]

---

[1] Former Rule 15(e) read as follows (see *United States v. Seijo*, 595 F.2d 116, 119 (2d Cir.

> "USE. At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence . . . . ."

[2] The only case we found involving the ability to use a deposition at a proceeding other than trial, *Merino v. United States Marshal*, 326 F.2d 5, 12 (9th Cir. 1963) (decided at time when the Rule allowed only defendants, but not the government, to move for depositions to

Second, even if *arguendo* Rule 15 authorizes depositions for use in connection with pre-trial suppression hearings, the government's motion does not comply with the rudimentary, unambiguous and unequivocal notice requirements of Rule 15(b)(1). That section requires "*reasonable* written notice of the deposition's date and *location*," and "*the name and address of each deponent*." (Emphasis added.)

1. Name and Address of Each Deponent

The government does not identify the witnesses it seeks to depose by name or provide their addresses as required by Rule 15(b)(1). Indeed, it does not even state the witnesses' nationality; it states only that they are "representatives of a foreign government who are located abroad." As with the witnesses, the foreign government is not identified.

2. Deposition's Date and Location

The location of the deposition is also indeterminate. The government states, uselessly, "the foreign government has … authorized" its unidentified "representatives" "to sit for a deposition overseas in a third country." There are approximately 200 countries in the world. Just as "representatives of a foreign government who are located abroad" is not the equivalent of "the name and address of each deponent, "overseas in a third country" is not reasonable notice of the deposition's location.

The conduct at issue in this case, and the conduct at issue in connection with the suppression motions occurred in an extremely volatile part of the world, on a continent stricken with Ebola virus. Defense counsel cannot intelligently assess the reasonableness of the chosen location –in terms of (among other matters) their own health, pre-trip immunization and visa needs, and physical safety – without knowing precisely where the deposition will be located. See e.g. *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000) ("In deciding whether to grant a Rule 15(a) motion, the district court must consider, among other factors, whether the … safety of United States officials would be compromised by going to the foreign location. *United States v. Omene*, 143 F.3d 1167, 1169-70 (9th Cir. 1998)."); *United States v. Moalin*, 2012 U.S. Dist. LEXIS 118986, 2012 WL 3637370, at *2 (S.D. Cal. Aug. 22, 2012) (finding defendant failed to show extraordinary circumstances warranting Rule 15 deposition in part because safety concerns to United States personnel weighed strongly against granting the motion). Similarly, and as discussed below, the court cannot fully assess whether the government has sustained its burden of proving that exceptional circumstances exist justifying foreign depositions and that the interests of justice are satisfied without knowing where the depositions are to take place and the law applicable to that jurisdiction.

The timing the government seeks for the depositions -- "the week of November 17-21" – is also unreasonable. The government made its motion without consulting the defense and without seeking any input as to counsel's availability. These dates are unfeasible for defense

---

preserve testimony), rejected such use. *Merino* held, "Rule 15(a) provides for defense depositions under certain situations in the course of Federal prosecutions …. Such rule does not provide for the use of defense depositions at preliminary examinations."

counsel not only because of prior commitments in this and other cases, but also (as explained more fully in a letter submitted *ex parte* to the classified information security officer for distribution to the court) because the court has not yet authorized various expenses that are essential in order for defense counsel to effectively examine any foreign witnesses abroad (and to identify any additional foreign witnesses for foreign deposition) who may have relevant and admissible testimony for trial and any hearing on the motions to suppress.

The government urges the court to order depositions during the week of November 17-21 in part because of "logistical issues" and "diplomatic complications relating to the deposition of foreign government representatives" and in part because of "the Court's standing scheduling order" and what it characterizes as "the looming trial date." Defendants respectfully submit that, in light of the complexity of the case, the challenges to the defense in preparing for trial including the cumbersome process of dealing with classified information, the inefficiencies and costs associated with (as the government points out in note 1 of its letter motion) potentially multiple trips abroad for foreign depositions, the current scheduling order is unrealistic and should be revisited. To this end, we request a status conference to be attended by counsel for all three defendants and the government in order to set a new schedule (including, if necessary, a reasonable date for any foreign depositions). The defendants agree to extending the trial and other dates.

      3. <u>Exceptional Circumstances and The Interest of Justice</u>

The government's failure to provide adequate and required notice as to the names and addresses of the witnesses and the location of the depositions are not the only reasons its motion should be denied. It has also utterly failed to prove that exceptional circumstances warrant the taking of foreign depositions in this case, and that the foreign depositions it seeks are in the interest of justice.

It is well settled that, in order to establish "exceptional circumstances" under Rule 15, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen,* 260 F.3d 68, 78 (2d Cir. 2001) (quoting *United States v. Singleton,* 460 F.2d 1148, 1154 (2d Cir. 1972)). See also, *United States v. Ismaili*, 828 F.2d 153, 158-9 (3d Cir. 1987) (criminal depositions are disfavored in criminal cases and burden of proof on the party seeking to conduct depositions to demonstrate both unavailability and materiality).

The government's showing of both unavailability and materiality is insufficient here.

Though neither term is defined in Rule 15, "unavailability" and "materiality" are explained in the case law. See *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir. 1984) ("Unavailability is to be determined according to the practical standard of whether under the circumstances the government has made a good-faith effort to produce the person to testify at trial. ... Moreover, `the lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness.'") (citations omitted); *United States v. Vilar,* 568 F. Supp. 2d 426, 440, 442 (SDNY 2008) ("`[T]estimony is material if it is "highly relevant to a central issue in the case . . . ."' *Grossman,* 2005 U.S. Dist. LEXIS 3135, 2005 WL 486735, at *3 (quoting *United States v. Drogoul,* 1 F.3d 1546, 1556 (11th Cir. 1993))… It is well-settled that a Rule 15 deposition `is necessary to prevent a failure

of justice' where the proposed witness is unavailable, her testimony is material, `and there are no substantial countervailing factors militating against the taking of the deposition' *Grossman,* 2005 U.S. Dist. LEXIS 3135, 2005 WL 486735, at *3 (citing *Johnpoll,* 739 F.2d at 709 and *Drogoul,* 1 F.3d at 1552-56).").

      a. <u>Materiality</u>

As for materiality, while there is no absolute requirement that, in order to conduct depositions under Rule 15, the moving party must present affidavits from the proposed deponents, or any other materials concerning prior statements of the deponents, "'"*at the very least, the proffer must alert the district court to the substance of the evidence that is at peril of being excluded.*"'" *United States v. Vilar,* 568 F. Supp. 2d at 440 (emphasis added; quoting *United States v. Des Marteau,* 162 F.R.D. 364, 368 (M.D. Fla. 1995) which, in turn quoted *United States v. Ramos,* 45 F.3d 1519, 1523 (11th Cir. 1995)).

Here, the government does not attach affidavits of the witnesses or otherwise describe the substance of their anticipated testimony and thus has not demonstrated the materiality or potential admissibility of the testimony it intends to elicit. Indeed, the government does not reveal anything about the substance of or need for the testimony it intends to elicit from the foreign witnesses it seeks to depose other than the conclusory assertion that (like the FBI Agents and other U.S. government representatives who are currently located in the U.S. and available to testify) their testimony "will establish that the defendants validly waived their <u>Miranda</u> rights and that their statements to agents of the [FBI] were voluntarily made…"

We are left to guess what role "the representatives of a foreign government" (if any) played in the arrest, detention and interrogation of the defendants. If, for example, the foreign "representatives" were simply in the room with the FBI agents (who are available to testify) when the interrogations of the defendants took place, their testimony would hardly be necessary to prevent a failure of justice, and no exceptional circumstances would call for conducting disfavored depositions abroad. *Cf. Vilar,* 568 F. Supp.2d at 441-442, where the court, in denying government's motion for deposition of witnesses Laybourn and Rye, noted, "While the government broadly asserts that [their] anticipated testimony is likely to concern the routing of correspondence and funds to and from [the defendant], it has failed to describe with any particularity the nature of such correspondence or funds, or to address the relationship between such conduct and any crimes alleged in the indictment," and "failed to assert that their testimony… would be more than merely cumulative of that offered by" other witnesses. Accordingly, because it found there was an insufficient basis to conclude that the anticipated testimony of Laybourn and Rye is "highly relevant to a central issue in this case," the court found that the government had failed to establish the materiality of the anticipated testimony and denied the government's motion to depose them abroad.)

4

b. Unavailability

Nor does the government fully explain what efforts it undertook to obtain the presence of the "foreign representatives" or to meet the stated objections (if any) of the "foreign government." It states only that the it inquired into whether the "foreign government would allow the representatives to testify at any hearing in the United States and the foreign government denied the government's request." *Cf. United States v. Johnpoll,* 739 F.2d at 707 (government spells out for the court the specific demands made by the foreign witnesses before they would agree to come to the United States to testify, and, before approving foreign deposition, trial judge "requested the government to negotiate with the witnesses in order to reduce their demands"); *see also United States v. Sindona*, 636 F.2d 792, 804 (2d Cir. 1980) (while government may orally advise the court of the factual situation regarding its good faith efforts to obtain the witnesses' presence at trial, it is preferable to present the court with affidavits setting forth the particulars of the government's efforts). Moreover, without identifying the "foreign government", it is impossible for the court to evaluate whether or not the foreign witnesses were "amenable to service of United States process, either by statute or treaty." *Johnpoll*, 739 F.2d at 709.

The reasons the "foreign government" might have had for denying the government's request for its "representatives" to testify in the U.S. and the government's response to this denial are important factors for the court to consider in evaluating whether "exceptional circumstances" actually exist and whether depositions of the representatives abroad actually serve the interests of justice. For example, given the defendants' assertions that their jailers subjected them to torture, the "foreign government" may be concerned that if its "representatives" participate in the U.S. legal system, these "representatives" may be exposed to criminal and/or civil liability for torture (and/or to prosecution for perjury for denying it). This would be an appropriate factor for the court to consider in ruling on the motion. See *e.g. Guam v. Ngirangas,* 806 F.2d 895, 897 (9th Cir. 1986) (in ruling on a Rule 15(a) motion, proper to consider that allowing a fugitive "who flouts the legal system" to "participate in that system with special dispensation, i.e., without the check of perjury sanctions" would "create an injustice"); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1569 (9th Cir. 1989) (fugitive status is a relevant though not a dispositive factor in the Rule 15(a) calculus; "the facts of each case must be separately considered to determine whether the exceptional circumstances contemplated by Rule 15(a) exist, justifying the deposition of … those individuals who consciously hold themselves beyond the reach of the law").

Similarly, the precise location of any deposition and the rules applicable to that jurisdiction are proper considerations for the court in evaluating whether the interests of justice would be served or not served by foreign depositions. See *e.g.*, *Johnpoll,* 739 F.3d at 708 (Court acknowledges significance of the fact that, while initially, the Swiss magistrates in charge of the scheduled depositions had indicated that all questions must be submitted in advance, ultimately the magistrates agreed to allow full cross-examination, and, therefore, Court approved of the depositions.) These factors cannot be evaluated in this case given the paucity of information contained the government's papers.

### 4. Findings Required Before A Deposition Outside The United States Without The Defendant's Presence

Finally, before a court may order depositions outside the United States without the defendant's presence, Rule 15(c)(3)(A)-(E) requires the court to make five discrete case-specific findings. The government's bald-faced, conclusory assertions do not provide a sufficient basis for the court to make any of the required findings.

### 5. Logistics

The government expresses concern with "logistical issues in connection with scheduling depositions" but, in its rush to schedule them, neglects important logistical concerns of the defendants and their attorneys. These include:

1. Taking into account the schedules of the witnesses, the attorneys and the prosecutors. Each defendant will need two attorneys to travel to wherever the Rule 15 is held, and one attorney in New York to sit with his/her respective client and explain what is going on and communicate with their colleague at the site of the deposition.

    The government will certainly bring two AUSAs and probably three since doing depositions in a foreign country is difficult and requires someone to confer with. For the same reason, each defendant also needs two attorneys at the site of the deposition.

2. Travel and hotel plans that take into account the probability of jet lag etc. (i.e. arrival a day or two before the proceedings begin)

3. Visas, shots, etc.

4. A facility must be selected that will accommodate;

    A. Closed circuit connection to the U.S.;
    B. A secure phone line for each defendant;
    C. Interpreters for the defendants;
    D. The ability to videotape the proceedings for the judge to review;
    E. A room that can function as a courtroom and accommodate approximately eleven people (6 defense counsel, three prosecutors, a judge, and a witness, and possibly an interpreter).

6

The government's motion papers reflect a cavalier disregard for the rights of the defendants. Notice, an opportunity to be heard, the rights to confront and obtain witnesses, and the effective assistance of counsel are all essential ingredients of a fair trial. They do not evaporate simply because the government slaps the label "terrorist" on the defendants or because the case involves classified information. For all of the above stated reasons, and for the reasons set forth in the *ex parte* and filing, the government's motion for foreign witnesses to be deposed abroad should be denied.

        Respectfully submitted,


        JANE SIMKIN SMITH
        DAVID STERN
        Attorneys for MOHAMED YUSUF