1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -   X

UNITED STATES OF AMERICA,    :    12 CR 661

                             :

       -against-             :
                                  United States Courthouse
                                  Brooklyn, New York

MOHAMED YUSUF,               :

                                  February 4, 2015
          Defendant.         :    11:15 o'clock a.m.

- - - - - - - - - - - -   X

                TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE SANDRA L. TOWNES
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        LORETTA E. LYNCH
                           United States Attorney
                           BY: RICHARD TUCKER
                               SHREVE ARIAIL
                           Assistant United States Attorneys
                           271 Cadman Plaza East
                           Brooklyn, New York


For the Defendant:         DAVID STERN, ESQ.


Curcio Counsel:            CESAR de CASTRO, ESQ.
                           VALERIE GOTLIB, ESQ.

Court Reporter:            Gene Rudolph
                           225 Cadman Plaza East
                           Brooklyn, New York
                           (718) 613-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

1        THE CLERK:  Ms. Interpreter, please raise your right

2   hand.

3        (The interpreter is duly sworn by the clerk.  She is

4   Magna Czagani.)

5        THE CLERK:  Criminal cause for Curcio hearing,

6   docket number 12 CR 661, United States of America versus

7   Mohamed Yusuf.

8        Counsel, please state your names for the record,

9   beginning with the government.

10        MR. TUCKER:  Rich Tucker and Shreve Ariail for the

11   United States.

12        Good morning, Your Honor.

13        THE COURT:  Good morning.

14        MR. STERN:  David Stern for Mr. Yusuf.

15        Good morning.

16        THE COURT:  Good morning.

17        MR. de CASTRO:  Cesar de Castro and Valerie Gotlib,

18   Curcio counsel.

19        THE CLERK:  Judge, we also have a Swedish

20   interpreter for the defendant who has previously been sworn.

21        Please state your name for the record.

22        THE INTERPRETER:  Magna Czagani.

23        THE COURT:  Good morning everyone.

24        We are going to begin with the Curcio issue in this

25   case.  I have been informed in a letter dated January 15th

1   from the government that Mr. Stern advised the government that

2   he had previously met with and interviewed --

3          MR. TUCKER:  I'm sorry.  I beg the Court's pardon.

4   I don't mean to interrupt Your Honor.

5          In the government's letter, we indicated that we

6   were requesting that the application or the notification be

7   filed under seal.

8          THE COURT:  Yes.

9          MR. TUCKER:  We would request, and obviously

10  whatever Your Honor wants to do we will follow, if we could

11  refrain from referring to the witness by his name.

12         THE COURT:  Yes.

13         MR. TUCKER:  That would be, given the security

14  concerns raised.  I apologize for interrupting the Court.

15         THE COURT:  No.  Thank you.

16         And Mr. Stern, is your client aware of the name?

17         MR. STERN:  My client has to be aware by virtue of

18  this inquiry, but we have no problem about not mentioning the

19  name in court.

20         THE COURT:  All right.  It is indicated that

21  Mr. Stern, though he was not formally retained, confirmed that

22  he did discuss with the potential witness information

23  protected by the attorney-client privilege.

24         Your client is aware of that, Mr. Stern?  You

25  explained that to him?

4

1          MR. STERN:  He is aware, both because I have told

2    him and I assume Curcio counsel has told him as well.

3          THE COURT:  All right.  I am going to begin by

4    asking Mr. Yusuf some questions.

5          How old are you, Mr. Yusuf?

6          THE DEFENDANT:  I was born in 1983.

7          THE COURT:  How old are you?  That was my question.

8          THE DEFENDANT:  Thirty-two.

9          THE COURT:  Thank you.

10         How far did you go in school?

11         THE DEFENDANT:  High school.

12         THE COURT:  All right.  Are you able to speak

13   English at all?

14         THE DEFENDANT:  To a certain degree, yes.

15         THE COURT:  All right.  But you do require the

16   services of an interpreter when you are in court?

17         THE DEFENDANT:  For certain legal procedures, yes.

18         THE COURT:  All right.  Are you satisfied with the

19   interpretation that you have received?

20         THE DEFENDANT:  Yes.

21         THE COURT:  All right.  Have you this morning, or

22   within the last 24 hours, taken any drugs, any medicine, or

23   pills or had any alcoholic beverage to drink?

24         THE DEFENDANT:  No.

25         THE COURT:  Do you understand why we are here today?

5

1          THE DEFENDANT:  Yes.  Yes, I do.

2          THE COURT:  All right.  Let me ask defense counsel,

3   Mr. Stern, do you have any doubt as to the defendant's

4   competence at this time?

5          MR. STERN:  No.

6          THE COURT:  And Curcio counsel, Mr. de Castro, you

7   had an opportunity to speak with the defendant?

8          MR. de CASTRO:  Yes, Your Honor.

9          THE COURT:  Do you have any questions as to his

10  competency at this time?

11          MR. de CASTRO:  No, Your Honor.

12          THE COURT:  All right.  What about the government?

13          MR. TUCKER:  Your Honor, the government has no

14  relevant or fresh information with respect to the defendant's

15  competency.

16          THE COURT:  All right.  Based upon the information

17  provided to me by counsel, as well as my conversations with

18  Mr. Yusuf so far this morning, I do find that he is competent

19  to continue with this proceeding.

20          Mr. Yusuf, I just want to emphasis for you the

21  seriousness of the charges that you are facing in this

22  five-count indictment.

23          You have been charged with conspiracy to provide

24  material support to a foreign terrorist organization.  I am

25  going to tell you about the penalties if you were convicted of

1    that charge.

2              In Count Two, providing material support to a

3    foreign terrorist organization; and Count Three, attempted

4    provision of material support to a foreign terrorist

5    organization.

6              Pursuant to statute, the penalties for those crimes,

7    if you were convicted, is fine or imprisonment up to 15 years

8    or both with regard to the first three counts.

9              The fourth count, receipt of military-type training

10   from a foreign terrorist organization, the statute indicates

11   that a person convicted of this crime in Count Four shall be

12   fined or imprisoned for ten years or both.

13             Finally, Count Five, unlawful use of firearms and

14   the statute with regard to this crime indicates that if a

15   firearm is proven to have been used and brandished not less

16   than seven years, that's not less than, with a maximum of life

17   pursuant to the statute; discharged, not less than ten years.

18   If it is proven one or more of the firearms was a machine gun,

19   not less than 30 years.  Any sentence imposed after a

20   conviction on Count Five would run consecutively, or after any

21   sentence imposed on counts one through four.

22             Have you discussed that, the seriousness of the

23   charges that you are facing, with your attorney?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Okay.  I am going to talk with you and

1    if at any time you do not understand something, or you have a

2    question, consult your attorney or ask me any questions and we

3    will clarify any question that you might have.

4         I have told you in the letter what the government

5    has informed me the apparent conflict of interest in your

6    lawyer's representation, that is, Mr. Stern.

7         I am looking for the letter.  Here is the letter.

8         I did tell you, and again I will repeat, I am

9    advised that Mr. Stern possesses privileged information about

10   an individual whose case is closely related to yours and who

11   may testify at your upcoming trial.  This information could

12   assist in your defense, that is, privileged information that

13   the government tells me that Mr. Stern has.

14        I am going to talk to Mr. Stern in your presence in

15   just a moment.

16        Mr. Stern may not disclose this information to you

17   or his co-defense counsel because of his ethical duties.  He

18   may not rely on this information in any way as part of your

19   defense team, including crafting trial strategies or in

20   cross-examining the witness involved here.  He has also

21   determined that he will not cross-examine this other

22   individual should the individual testify at your trial.

23        Let me say to you that the United States

24   constitution gives every defendant the right to effective

25   assistance of counsel.  When one lawyer represents a defendant

1   and has represented a witness in the case in which the

2   defendant is being tried, the lawyer may have trouble

3   representing you and that prior client of his.  That is

4   because he owes to you a duty of loyalty, a duty to keep your

5   confidences, and he also owes that same duty to the prior

6   client.  Once the representation ceases, the duty remains, the

7   duty of loyalty and confidentiality.

8           Do you understand what I am saying?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  Before I get talking to you about

11  the law, I have some questions that I want to ask your

12  attorney because the law is clear that if there is a conflict

13  of interest of any kind, the attorney may not be in a position

14  to give unbiased advice to you, the client, about such matters

15  as whether or not to testify or to plead guilty and cooperate,

16  since plea or cooperation from you could result in some harm

17  to the former client.  The defense of you could be impaired

18  because vital cross-examination becomes unavailable to you,

19  that is, if there is information that is learned from

20  confidences given to Mr. Stern.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  The conflict regards the

24  ability to cross-examine a former client who is a witness

25  testifying against a defendant at the trial.

9

1          Mr. Stern, did you actually represent the witness at

2     any court proceedings?

3          MR. STERN:  No.

4          THE COURT:  Can you tell me what this representation

5     included?

6          MR. STERN:  Yes.

7          It wasn't really representation.  This witness

8     reached out to me, I am not sure from what source, asked if I

9     would come speak to him about being retained by him.  I told

10    his lawyer that I was going to go talk to him.  I did go talk

11    to him.  And then he -- I don't know the reason.  I think

12    among the reasons, he didn't have the money, didn't retain me.

13         So that was the end of our relationship, to the

14    extent it was a relationship.  I did not represent him.  We

15    did discuss his case to some extent.

16         MR. TUCKER:  Your Honor, if I may?  I could just

17    perhaps supplement that.

18         I obviously had an opportunity to speak with the

19    witness and the witness has indicated, without going into any

20    of the detail of his discussions with Mr. Stern, that they

21    occurred on multiple days and that they were substantial.  So

22    I obviously don't know the substance of the discussion but I

23    do know that the discussions were substantial.

24         I am also aware that these conversations took place

25    well before Mr. Stern was appointed in this case in

1   January 2014.  Of course, the government didn't learn of the

2   conflict until Mr. Stern disclosed it in December of 2014.  If

3   we had been aware of the conflict at the time of his

4   appointment, I imagine that we would have been having a very

5   different discussion than we are today.  But here we are.

6           But I want to make clear that based on what I have

7   been told, this was not a brief conversation by any means.

8   There was meat on the bone.

9           MR. STERN:  Your Honor, I am not going to get into a

10  dispute with my client.  I met with him two times.  I suppose

11  what's considered "substantial" is subject to interpretation.

12  But as soon as I became aware that the government was going to

13  call this person, or might call this person, I informed them.

14          I stand by what I have said to you.

15          THE COURT:  All right.  Did you ever interview the

16  witness with respect to any facts relating to this case?  I am

17  not going to go into what you said and what he said.  But

18  generally?

19          MR. STERN:  I am going to say no to that, although

20  at the time I had never heard of this case.  So --

21          THE COURT:  Now you have heard of it.

22          MR. STERN:  I don't recall anything he said that has

23  to do with this case.  I suppose potentially he mentioned

24  times relevant to this case.  But he certainly didn't mention

25  this client, or at least not that I know of.

1          Is that the government's --

2          MR. TUCKER:  Again, Your Honor, I don't know and I

3     didn't ask for the substance of the discussions.  What I can

4     represent to the Court is that this witness was a

5     coconspirator with Mr. Yusuf, that they fought together with

6     al-Shabaab, and at the time Mr. Stern would have met with the

7     witness he would have been charged with offenses relating to

8     that criminal conduct.

9          I have no idea what they actually discussed but

10    obviously the government is very troubled.  I would just add,

11    that while we are obviously eager to protect the contents this

12    particular witness may testify in this case, it is a matter of

13    public record that this witness is cooperating with the United

14    States more broadly.

15         So I am not exactly certain what Mr. Stern learned

16    in December of 2014 that he would not have known when he was

17    appointed in this case.  I will take him at his word, but the

18    government is obviously very troubled now and we are frankly

19    concerned by the nature of the overlap here.

20         MR. STERN:  That's kind of you, to take me at my

21    word.  I appreciate that.

22         I had no way of knowing that this witness was going

23    to testify in this case, and if they think different they

24    could give us discovery earlier and then we would know.

25         THE COURT:  All right.

1        MR. STERN:  So I am not sure what they are trying to

2   say here.

3        THE COURT:  Calm down.  Really, I am not going to

4   deal with this.

5        MR. STERN:  I am not going to have him say things

6   about me or imply things about me that are untrue.

7        THE COURT:  You may respond.  But calm down.

8        MR. STERN:  I am calm, Judge.

9        THE COURT:  Respond.

10        MR. STERN:  I am very calm.

11        THE COURT:  All right.  Did you ever interview the

12   witness with respect to his background concerning issues that

13   may be used on cross-examination?

14        MR. STERN:  I talked with the witness about the

15   reasons he was in jail here and I'm sure that included his

16   background.

17        You know, the government can ask him about the

18   things we talked about.  He can waive his attorney-client

19   privilege and tell them anything they want to know.  He may

20   have a better memory of it than I do but I'm sure I did talk

21   to him about his background.

22        THE COURT:  All right.  You say you met with him

23   twice.  How long did this representation continue?

24        MR. STERN:  I would say, I met with him twice within

25   about a one-month period.  I would have to get records from

1   the jail.  I could get visiting records and know exactly what

2   dates it was.

3               THE COURT:  I would like to do that.

4               MR. STERN:  So we could get those by subpoena or

5   maybe the government could just get them.  I don't know.  But

6   there are records of each time I visited him because I have to

7   fill out forms.  I would say, it was within a one-month

8   period.  It could be six weeks.  But in that ballpark.  I

9   would say the meetings were between an hour-and-a-half and two

10  hours.

11              THE COURT:  All right.  After that period, did you

12  have any further role in representation of this witness?

13              MR. STERN:  No.

14      The lawyer he had who was a person I know continued

15  to represent him and I think continues to represent him.  I

16  may be wrong about that.  But I think the same lawyer still

17  represents him.

18              THE COURT:  All right.  Mr. Yusuf, you understand

19  that I am asking these questions because the lawyer's ability,

20  Mr. Stern's ability, to cross-examine a witness is often

21  limited because of confidential information received during

22  the attorney's prior representation of the witness.

23              Do you understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  All right.

1     MR. STERN:  Judge, I have told Mr. Yusuf that I

2 think because it would have the appearance of impropriety, I

3 don't intend to cross-examine this witness.  My co -- I don't

4 mean my immediate cocounsel.  I mean, counsel for the other

5 defendants I assume will cross-examine him.  Although I can't

6 tell them what to do, but I will not cross-examine him.

7     MR. TUCKER:  Your Honor, I would just add -- I could

8 sit down.

9     THE COURT:  I have a question.

10     Are you saying no one will cross-examine this

11 witness for Mr. Yusuf?

12     MR. STERN:  That is what I am saying.

13     MR. TUCKER:  Your Honor, that's deeply troubling for

14 the government.

15     THE COURT:  Yes, deeply troubling to this Court too.

16     MR. STERN:  I am not sure there will be occasion for

17 any of us to.  I think what we need to do will be covered by

18 lawyers for the other defendants.  I haven't seen the

19 discovery yet.  So I certainly will not cross-examine him.  I

20 certainly will not.

21     MR. TUCKER:  Your Honor, Mr. Yusuf is represented by

22 two attorneys.

23     THE COURT:  Yes.  What about the other counsel?

24     MR. STERN:  I suppose if we thought there was a real

25 need to, my cocounsel could cross-examine him.  Obviously

15

1  without help from me about privileged information.  But until

2  I see discovery I won't know if that's necessary or not.

3          THE COURT:  Do you understand that, Mr. Yusuf?

4          THE DEFENDANT:  Yes.

5          THE COURT:  The possibility that this witness would

6  not be cross-examined by an attorney representing you?

7          THE DEFENDANT:  Yes, I do understand.

8          THE COURT:  Okay.

9          MR. TUCKER:  Your Honor, I think that the Court is

10  going in the same direction at least that I am thinking.  I

11  would hate to be dealing with this problem again in the middle

12  of trial.

13          THE COURT:  Yes.

14          MR. STERN:  This problem won't be resolved until we

15  see the discovery, until we see the 3500 material and know

16  what, if anything, this witness has to say about Mr. Yusuf.  I

17  don't know.

18          THE COURT:  I understand that.  But to say at this

19  point that you don't expect that Mr. Yusuf will have an

20  attorney who cross-examines this witness?

21          MR. STERN:  I think there is a likelihood that we

22  won't need to, yes.  Again, I don't know what the witness is

23  going to say about him.

24          THE COURT:  Yes.  The problem I am having is that

25  you are making this decision, first of all, with regard to

1   this witness at this period of time.  As I was reading the

2   letter from the government, they indicated to me that one of

3   your, or your cocounsel would handle all matters with regard

4   to cross-examination of this witness, including deciding

5   whether or not to --

6              MR. STERN:  I don't think I am barred from helping

7   her decide whether or not based on material we are given.  I

8   don't think I am barred from reading that material and

9   discussing that material with her.  I think what I am barred

10  from doing, and I agree that I am barred from doing, is to

11  talk about things that I know as a result of my prior, what we

12  are loosely calling representation of this person.  So I don't

13  think we have any disagreement about that.

14             But I think if we are given 3500 material, I am able

15  to read it and to talk with my cocounsel about it.  I don't

16  see what bar there is to that.

17             THE COURT:  As long as you are not disclosing any

18  confidences --

19             MR. STERN:  I wouldn't discuss anything not

20  contained in that 3500 material.

21             THE COURT:  No.  This is what I am saying.  I don't

22  know whether anything contained in the 3500 material will be

23  relevant to the conversations that you have had with your

24  former client.

25             MR. STERN:  If it's duplicative of those

1   conversations, it's now been provided to us.  If it's not, I

2   won't use anything I have learned from contacts with that

3   person.

4           THE COURT:  Okay.  Have a seat.

5           The Second Circuit has recognized that a serious

6   problem arises when there is substantial risk that the

7   lawyer's representation of the client would materially and

8   adversely be affected by the lawyer's duties to a former

9   client.  This is because a lawyer owes an absolute duty of

10   loyalty and confidentiality to his former client.  I am

11   reading from United States versus Yannotti, at 358 F. Supp 2d

12   289 at page 295.

13           The duty which remains in force even after

14   representation ends precludes the lawyer from disclosing

15   matters revealed to him by reason of the confidential

16   relationship absent release from that duty under law.

17           That means that a lawyer cannot use privileged

18   information obtained from his former client during prior

19   representation that would adversely affect that client in the

20   present proceeding, see United States versus James,

21   708 F2d 40.  That's a Second Circuit case also.

22           Thus, in representing his current client, a lawyer

23   cannot attack his former client through cross-examination or

24   argument to the jury, United States versus Pizzonia,

25   415 F Supp 2d 168 at pages 177 to 178.

1          Because of the attorney's prior representation of

2    the witness, the attorney cannot ethically cross-examine the

3    cooperating witness without his consent.

4          As I read this, I find, Mr. Stern, that you cannot

5    even with your cocounsel be involved in preparing for

6    cross-examination of him or cross-examine him.

7          MR. STERN:  I don't think that's what the

8    proposition stands for, Judge.

9          THE COURT:  I am ruling that it does.

10         MR. STERN:  So that I -- I shouldn't or may not read

11   the discovery as to this witness and may not confer with my

12   cocounsel about ways he should be cross-examined based solely

13   on information provided by the government?

14         THE COURT:  Correct.

15         MR. STERN:  I have no choice but to abide by your

16   ruling.

17         THE COURT:  I would also refer to United States

18   versus Falzone, 766 F. Supp 1265 at page 1275.  That is a

19   Western District of New York 1991 case, finding it improper

20   for an attorney to cross-examine his prior client because the

21   attorney is in a position to use information gleaned from the

22   prior representation either purposely or inadvertently.  That

23   is why I am making this ruling.

24         All right.  Mr. Yusuf, based upon the questions that

25   I have asked Mr. Stern, do you understand that with regard to

1  this witness, Mr. Stern will take no part in questioning or

2  cross-examining or investigating this witness?

3         THE DEFENDANT:  Yes, I understand.

4         THE COURT:  That is because of that prior

5  representation.

6         THE DEFENDANT:  Okay.  Yes.

7         THE COURT:  Do you also understand that Mr. Stern

8  said that possibly no one would cross-examine the witness for

9  you.  However, we have determined here that the lawyer who

10 does the cross-examination will make that decision.

11        THE DEFENDANT:  Okay.  Yes, I understand.

12        THE COURT:  All right.  Do you have any questions

13 about that at all?

14        THE DEFENDANT:  Will anybody from my attorney's side

15 be able to cross-examine?

16        THE COURT:  Yes.  You have two attorneys.

17        THE DEFENDANT:  Okay.  Okay.

18        THE COURT:  All right.  We have determined, and

19 Mr. Stern has assured me that he will not make that

20 determination, the other attorney who has had no contact with

21 this witness will.

22        THE DEFENDANT:  Yes, I understand.  That's okay.

23        THE COURT:  All right.

24        MR. TUCKER:  Your Honor, one question, based on the

25 Court's ruling.

20

1          The government in anticipation of the depositions

2     later this month anticipates turning over some of the 3500

3     relating to this witness along with obviously the 3500

4     relating to the witnesses to be deposed, to provide context

5     for counsel as well as to address some potential Giglio

6     issues.

7          I just want to be clear from the Court's ruling,

8     will Mr. Stern also be precluded from reviewing this witness'

9     3500 generally?  One would imagine there would be very little

10    point if he is not going to be able to participate in the

11    cross-examination.  I think that would be the government's

12    view.  Because that same divided duty of loyalty would be

13    triggered if he were to observe inconsistencies or

14    consistencies between things that he said or that he spoke

15    about with the witness and the 3500 that the government

16    discloses.

17         I just want to make certain that at least I

18    understand the Court's ruling in that respect and make sure we

19    thought that through.

20         THE COURT:  I didn't address that.  Because you are

21    telling me this for the first time --

22         MR. TUCKER:  Of course, Your Honor.

23         THE COURT:  -- this morning.

24         MR. TUCKER:  I apologize.

25         THE COURT:  I could not address it.

GR      OCR      CM      CRR      CSR

1        I think what I am going to have to do, and I hate to

2   have you come back again, is that I am going to have to stop

3   at this point and address those issues.  Then we'll have to

4   talk more about it, just so that I can decide this issue.  It

5   is one I have not thought about before because it hasn't been

6   mentioned to me before.

7        MR. TUCKER:  Absolutely, Your Honor.  I apologize.

8        I am also processing the information, that it's

9   possible that no one from Mr. Yusuf's defense team would

10  cross-examine this witness.

11       I can also, just for the Court's edification,

12  provide just a small bit of additional context.

13       This witness was Mr. Yusuf's commander in al-Shabaab

14  for a period of time and supervised him and one of his

15  codefendants in combat in Somalia.  So their relationship was

16  somewhat intimate.  And, obviously, Mr. Yusuf and his

17  codefendants did different things at different times and they

18  had contact with this witness at different times.

19       As I am sort of thinking about what Mr. Stern has

20  said today, there will certainly be, or I expect there will be

21  testimony from this witness that is specific to Mr. Yusuf

22  where he may not address his codefendants.  That's where I was

23  sort of surprised about the idea that no one might want to

24  cross-examine the witness on Mr. Yusuf's behalf.

25       I think probably the additional time would be useful

1  because Curcio counsel could discuss this further with

2  Mr. Yusuf as well because I think it's a bit of a dynamic that

3  maybe we hadn't thought through all the way yet.

4        MR. STERN:  Let me just say to the last point that

5  was raised by the government about -- information about the

6  person we are talking about and its relevance to other

7  witnesses.  I don't think I could really fairly represent

8  Mr. Yusuf if I am not allowed to find out whether there are

9  inconsistencies between government witnesses that I intend to

10 elicit through one witness as opposed to another.

11       So to give you an example, witness A, who is the

12 witness who at one time I had spoken with, says -- I don't

13 want to make things up -- says something.  And witness B says

14 something different.  I might want to elicit that fact from

15 witness B because I know that it's inconsistent with what

16 witness A said.

17       THE COURT:  Wait.  Witness A is the client you

18 formerly represented?

19       MR. STERN:  Correct.

20       In 3500 material there is a statement of him saying

21 whatever.  Witness B says something different.  I would need

22 to elicit that statement from witness B to effectively

23 represent Mr. Yusuf.  My cocounsel would need to elicit the

24 inconsistent statement of witness A to effectively represent

25 Mr. Yusuf.

1        So that I don't see how, if there are what the

2   government characterizes as Giglio, I don't know what it is,

3   some kind of inconsistencies between these two witnesses, I

4   can't possibly effectively represent Mr. Yusuf if I am also

5   precluded from cross examining those witnesses about what may

6   be inconsistencies.  Again, I haven't seen the material.  I am

7   not saying these things do or don't exist.  It seems from what

8   the government said they may exist.

9        Am I making myself clear?  It is hard because we

10  can't talk about --

11       THE COURT:  Yes, you are making yourself clear.

12       Issues are arising that I had not thought of before.

13       MR. ARIAIL:  Your Honor, if I may just raise one

14  more issue that I hadn't thought of as well, which is to the

15  extent that Mr. Stern is unable by his prior representation to

16  cross-examine witnesses that we intend to call in our

17  depositions, which are fast approaching, then I think

18  Miss Simkin Smith needs to begin preparing for that role as

19  opposed to Mr. Stern so that we can move forward on the track

20  that we had previously set forth.

21       As Your Honor is aware, the logistics of setting two

22  depositions in these two countries has been extraordinarily

23  difficult.  I would just want to make sure that we were

24  continuing to hold those dates regardless of how this is

25  unpacked, and in particular since Mr. Yusuf is represented by

1    two able counsel.

2          MR. STERN:  Judge, Ms. Simkin Smith I don't think

3    has ever cross-examined a witness in her life.  She is on this

4    case doing a wonderful job writing.  But I don't think she's

5    ever cross-examined a witness.

6          MR. TUCKER:  Your Honor, I don't know.  I don't know

7    how we exactly process that.

8          MR. STERN:  Process by listening and understanding

9    the simple words.  She's never cross-examined a witness.

10          THE COURT:  Maybe we need another attorney.  I've

11    got to make that decision.

12          What day of the week is it?

13          THE CLERK:  It's Wednesday.

14          THE COURT:  What about Monday morning while jury

15    selection is being done in another case?

16          MR. TUCKER:  Your Honor, we are available whenever

17    the Court needs.

18          Obviously, the government's goal here is I think the

19    same as everyone's goal, which is to make certain that

20    Mr. Yusuf has adequate and effective representation.

21          THE COURT:  What about you, Mr. Stern?  Monday

22    morning?

23          MR. STERN:  Monday morning is fine for me.  I have

24    something at 3:30 which I assume this will not interfere with.

25          THE COURT:  Hopefully not.

1        Mr. de Castro, what about you?

2        MR. de CASTRO:  Judge, I have a potential conflict

3   in another court appearance in the morning at 9:30.  I could

4   do a late morning.

5        THE COURT:  What does late morning mean?  Give me a

6   time.

7        MR. de CASTRO:  Like 11:30.  But I understand the

8   Court has a jury out.  I can find out if my cocounsel on that

9   case can cover.

10        THE COURT:  Please do.

11        MR. de CASTRO:  I just have to call him.

12        THE COURT:  Please do.  Do you want to do that?

13        MR. de CASTRO:  I can do that right now.

14        (Pause.)

15        MR. de CASTRO:  Judge, I haven't been able to get in

16   touch with the lawyer but I'll do what I have to do.  I can be

17   here Monday morning.

18        THE COURT:  All right.  Ms. Smith?

19        THE CLERK:  She hasn't returned my email yet, Judge.

20        (Pause.)

21        THE COURT:  I want to finish this before we do

22   anything else.  We will put this on for Monday.  Because of

23   the continuation of the hearing and my need to do some

24   research to address these issues that have arisen that I was

25   not aware of, the time is excluded.

26

1          MR. TUCKER:  Thank you, Your Honor.

2          With the Court's permission, I would like to go back

3    and confer with our ethics advisor and potentially put in a

4    letter as well.  There have been some new facts that have come

5    to light that I would like to take a more reasoned position on

6    which may help the Court.

7          THE COURT:  All right.  And certainly, if you would

8    like to submit anything, you may do so.

9          MR. STERN:  Thank you.

10          THE COURT:  Thank you.  We are adjourned.

11          (Matter concludes.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25