Jane Simkin Smith
Attorney At Law
P.O. Box 1277
Millbrook, New York 12545
845 724 3415
Fax 888-391-5018
jssmith1@optonline.net

February 19, 2015

<u>By ECF</u>

Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *United States v. Ahmed*, et al. 12 CR 661 (S2) (SLT)

Dear Judge Townes:

      This letter is written on behalf of defendant Yusuf to apprise the Court of certain developments concerning a potential defense witness, Dr. Hirotaka Nakasone, Senior Scientist at the FBI's Voice Recognition Program, and to move for two forms of relief to insure against undue interference with the preparation of the defense.

      We first brought Dr. Nakasone to the Court's attention on January 19, 2015, in connection with our motion to preclude the testimony of the Government's proffered voice identification expert, Jonas Lindh. In its opposition to this motion, the Government argued that the motion should be denied because "[n]o suggestion has been made on the part of the defense that the actual techniques that Mr. Lindh has relied upon are not generally accepted in the scientific community." (See ecf ## 133, 153 at p. 76, 166) We linked to testimony Dr. Nakasone gave in a widely publicized trial in June 2013, in which he described multiple quality issues with even the latest voice recognition technologies and made clear that, because of these issues, the FBI does not permit its technicians to offer opinion testimony in court even if, in the lab, a positive identification is made. On February 10, 2015, we identified Dr. Nakasone as a potential defense expert in an application for authorization to provide him with the Mr. Lindh's reports. (See ecf # 185)

      After the filing of this notice on February 10, 2015, the following sequence of events occurred:

1. In an email sent on the evening of February 10, AUSA Shreve Ariail advised:

    With respect to your expert filing today, as you may have expected, we have already discussed Mr. Lindh's findings and analysis with Dr. Nakasone and he will be spending time with the reports while we are traveling.

2. On February 11, 2015, defense counsel spoke on the telephone with Dr. Nakasone. (Dr. Nakasone initiated the call to Mr. Stern, returning a message Mr. Stern had left for him the day before.) Dr. Nakasone confirmed that he had been contacted by the Government and told they would send him the reports. He also confirmed that he would not deviate from the testimony he gave in 2013. He expressed no hesitation or reservations about speaking with us, and we scheduled a follow-up phone conference for 9:30 am on March 2, 2015.

3. On February 13, 2015, in an email sent at 8:27 p.m., AUSA Ariail wrote:

    Dr. Nakasone has advised that he would like any future communications from/with you to him to be handled through our office.

    As I previously advised, we have asked him to review Mr. Lindh's reports (as well as the underlying materials) over the coming weeks. We will advise you if he has anything relevant to say about the analyses. As I advised David, we may seek to call him as a witness.

4. On February 14, 2015, defense counsel sent an email to Dr. Nakasone seeking confirmation of AUSA Ariail's report; the same day, Dr. Nakasone responded by email and stated:

    Since I was initially contacted by AUSA Shreve Ariail much earlier for this case, I thought it would be best if I communicate with your team through the AUSA's office. It is accurate that I asked Mr. Ariail to pass the message to your office that I prefer my future communications with you and your office be handled through his office.

We write to be sure that (1) by simply announcing they may call Dr. Nakasone as a Government witness at trial, the prosecutors are not using the Jencks Act, 18 U.S.C. § 3500, improperly to shield their independent obligation to timely produce favorable material under *Brady v. Maryland*, 373 U.S. 83, 87 (1963); and (2) the Government did not signal (implicitly or explicitly) to Dr. Nakasone that he should not communicate directly with the defense.

Since either would unfairly interfere with defendant's ability to prepare his defense, we move for an order (1) compelling disclosure of material information favorable to the defense that we anticipate the Government has already received or will shortly receive from Dr. Nakasone; and (2) directing Government counsel to advise Dr. Nakasone in writing not only that he has the right to speak with defense counsel if he so chooses, but also that the prosecutors in this case can have no objection to Dr. Nakasone's speaking with us directly.

This is not the first time that we have made a "*Brady*" motion relating to the Government's voice identification evidence. When the Court ruled on the first motion, dated January 22, 2015, it noted that the Government "is well-aware of its obligations under *Brady*," and that "Yusuf does not demonstrate that the Government possesses and refuses to dislos[e] any *Brady* material. To the extent that the Government is in possession of *Brady* material, such as

material that tends to establish that the voice identification procedures employed by the Government are unreliable, the Court expects that the material will be produced in time for its effective use by defense counsel." (Order, January 23, 2015)

Three recent statements set forth above provide a basis (one we did not have before) for inferring that the Government is in possession of *Brady* material that it is not disclosing: Dr. Nakasone's statement that he was "initially contacted by AUSA Shreve Ariail *much earlier* for this case;" AUSA Shreve's statement "we have *already discussed* Mr. Lindh's findings and analysis with Dr. Nakasone;" and Dr. Nakasone's assurance that *he would not deviate* from the testimony he gave in 2013 concerning the reliability of voice identification technologies and the FBI's policy against voice identification expert opinion testimony. Presumably, Dr. Nakasone took the same position when he was contacted by AUSA Ariail "much earlier" and discussed Lindh's findings and analysis with him, but the Government did not disclose this.

We trust that the prosecutors fully understand why information from the Senior Scientist of the FBI's Voice Recognition Program discrediting or contradicting or questioning the reliability of the methodology actually used by Mr. Lindh, or a methodology similar to the one used by Mr. Lindh, would be material to the preparation of the defense. The concern that the Government may be using the Jencks Act to defer or override its *Brady* obligations to disclose such information to the defense stems from Mr. Ariail's recent revelation, "we may seek to call him as a witness," combined with his prior contentions that -- in seeking disclosures relating to the lack of reliability of voice identification methods similar to the ones utilized by Mr. Lindh in this case -- we were seeking early production of materials pursuant to 18 U.S.C. § 3500. (See ecf # 163; T. status conference, 1/8/15)[1]

The Government's *Brady* obligation to timely produce material information potentially leading to admissible evidence favorable to the defense is a "constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500." *United States v. Rittweger*, 524 F.3d 171, 181 & n. 4 (2d Cir. 2008) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produces exculpatory material under

---

[1] When we made the initial *Brady* requests, and when we identified Dr. Nakasone as a potential defense expert on February 10, we had no idea the Government had any intention of calling Dr. Nakasone as a witness. He was not noticed by the Government in any expert notice filing, and, given Dr. Nakasone's stated position when testifying in 2013 regarding the lack of reliability of existing voice identification technologies and the FBI policy against offering expert opinion testimony, it did not occur to us that the Government might seek to call him. (Indeed, by letter dated January 15, 2015 (ecf # 161), we clarified that we were not seeking the statements of persons the Government intends to call as witnesses at trial, but rather, "any information regarding any U.S. law enforcement agency that has a policy or position contrary to that espoused by the government at trial – specifically, that the methods utilized by Mr. Lindh in identifying what he claims is Mr. Yusuf's voice are flawed or unreliable." We noted that we presumed that the Government would *not* call witnesses who contradict its position to make it obvious that we were not seeking 3500 material, and only information that was favorable or material to preparing the defense.)

3

*Brady*"); see also *United States v. Rodriguez,* 496 F.3d 221, 225-26 (2d Cir. 2007) (Court holds that Government investigators had no obligation to take notes and, therefore, the Government did not violate defendant's rights under the Jencks Act when it failed to disclose witness's lies; however, Court also noted that Government does have obligation under *Brady* to disclose information that materially impeaches its witness whether or not that information is in writing).

Given Dr. Nakasone's assurance that he would not deviate from the positions he expressed when he testified in 2013, it is, frankly, hard to believe that the Government actually intends to call him as a witness at trial. And so we can't help but wonder if the Government is invoking the Jencks Act disingenuously to avoid its obligations under *Brady*.

To insure against such misuse of the Jencks Act, we ask that the Government be ordered to disclose, in addition to the information requested previously (see ecf # 161; defendant's letter dated December 30, 2014, exhibit to ecf # 163, # 171), any information the Government has already received or receives in the future from Dr. Nakasone (or anyone else)– whether in writing or reduced to writing or received orally – that in any respect (1) is critical of Mr. Lindh's reports, or analysis; (2) questions the validity or reliability of any of the methodology Mr. Lindh employed; (3) indicates the position of any Government agency (law enforcement or otherwise) that the state of the art of voice identification is not sufficiently reliable to allow for any person connected with that or other government agency to render an expert opinion in court.

Dr. Nakasone's abrupt about-face – one day he was willing to talk with us without reservation, and two days later we were advised by the Government that Dr. Nakasone wished to communicate with us only through the U.S. Attorney's Office – suggests that, after we identified Dr. Nakasone as a potential defense witness on February 10, and after we spoke with him on February 11, the Government, either implicitly or explicitly, signaled to Dr. Nakasone that it would prefer if he did not consult with us directly. Prosecutorial overreaching that substantially interferes with the defense "or with a potential defense witness's unfettered choice to testify" is unfair and, under certain circumstances, may violate due process. *United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988).

In this vein, the Second Circuit has "wholeheartedly" endorsed the conclusions of courts that have refused to countenance prosecutorial interference with the preparation of the defense by restricting counsel's ability to freely interview witnesses willing to speak with counsel. See *International Business Machines v. Edelstein,* 526 F.3d 37, 43 (2d Cir. 1975) (citing, *Gregory v. United States*, 125 U.S.App.D.C. 140, 369 F.2d 185, 188-9 (1966); *Coppolino v. Helpern,* 266 F.Supp. 930, 935-6 (SDNY 1967); *Johnson V. National Broadcasting Co.,* 356 F. Supp. 904, 910 (EDNY 1973) ("While it is true that any witness has the right to refuse to be interviewed if he so desires… it is equally true that the State may not bar a prospective witness from speaking with defense counsel, when and if such witness desires.") (Citations omitted)).

In *Gregory,* the prosecutor advised witnesses not to talk to anyone unless he, the prosecutor, were present; the Court disallowed such conduct on the ground that it amounted to impermissible interference with the preparation of the defense:

4

> Witnesses … to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which … elemental fairness and due process required that he have.
>
> . . .
>
> A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined. The current tendency in the criminal law is in the direction of discovery of the facts before trial and elimination of surprise at trial. *A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case.* [Footnotes omitted; emphasis added.]

American prosecutors play a "special role" in the search for truth in criminal trials. *Strickler v. Greene,* 527 U.S. 263, 281 (1999). See *Berger v. United States,* 295 U.S. 78, 88 (1935) (the United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.")

In order to promote the quest for truth and justice, we seek to insure that the prosecution has not – either intentionally or unintentionally -- interfered with the defendant's ability to interview Dr. Nakasone and prepare him to testify as a witness for the defense if appropriate. We, therefore, seek an order compelling Government counsel to advise Dr. Nakasone in writing not only that he has the right to speak with defense counsel if he so chooses, but also that, because of the special role played by the American prosecutor in the search for truth in criminal trials, the prosecutors in this case can have no objection to Dr. Nakasone's speaking with us directly.

                                                       Respectfully submitted,

                                                    _____/s/_____
                                                    Jane Simkin Smith
                                                    David Stern
                                                    Attorneys For MOHAMED YUSUF

cc: All AUSAs and counsel of record by email