1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,       : 12-CR-00661(SLT)
                                :
        -against-               :
                                :
                                : United States Courthouse
                                : Brooklyn, New York
ALI YASIN AHMED, MADHI HASHI    :
and MOHAMED YUSUF,              :
                                : Tuesday, February 17, 2015
        Defendants.             : 3:00 p.m.
                                :
                                :
                                :
- - - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE SANDRA L. TOWNES
                    UNITED STATES DISTRICT JUDGE

                       A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                      United States Attorney
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                 BY:  RICHARD M. TUCKER, ESQ.
                      Assistant United States Attorney

For Deft. Ahmed:     SUSAN G. KELLMAN, ESQ.


For Deft. Hashi:     KARLOFF C. COMMISSIONG, ESQ.

For Deft. Yusuf:     DAVID STERN, ESQ.
                     JANE SIMKIN SMITH, ESQ.


Court Reporter:   Stacy A. Mace, CRR, RPR
                  Official Court Reporter
                  E-mail:  smacerpr@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.



                    SAM      OCR      CRR      RPR

Proceedings 2

1      THE COURTROOM DEPUTY:  Criminal Cause for Status
2  Conference, Docket number 12-CR-661, The United States of
3  America versus Ali Ahmed, Madhi Hashi and Mohamed Yusuf.
4      Counsel, please state your names for record
5  beginning with the government.
6      MR. TUCKER:  Rich Tucker for the United States.
7  With me today is Special Agent Mary Boese from the Federal
8  Bureau of Investigation.  Good afternoon, Your Honor.
9      THE COURT:  Good afternoon.
10     MR. STERN:  David Stern for Mohamed Yusuf.  Good
11 afternoon.
12     THE COURT:  Good afternoon.
13     MS. KELLMAN:  Susan Kellman for Ali Ahmed.  Good
14 afternoon, Your Honor.
15     THE COURT:  Good afternoon.
16     MR. COMMISSIONG:  Karloff Commissiong for Madhi
17 Hashi, Your Honor.  Mr. DeMarco had a trip planned before this
18 scheduled court.
19     THE COURT:  Yes; good afternoon.
20     MS. SMITH:  Jane Simkin Smith, also for Mohamed
21 Yusuf.
22     THE COURT:  All right.
23     THE COURTROOM DEPUTY:  And, Judge, we have a Swedish
24 interpreter for the defendants.  Please state your name for
25 the record.

Proceedings                                                       3

1            THE INTERPRETER:  Magna Czagani.
2            (Interpreter sworn.)
3            THE COURT:  All right, good afternoon.  We have a
4    status conference this afternoon.  Now, Mr. Tucker.
5            MR. TUCKER:  Thank you, Your Honor.
6            And first off, I appreciate the Court scheduling
7    this on relatively short notice.  It seemed to make sense for
8    us all to get together today to talk through a few logistical
9    points with the upcoming overseas depositions.
10           THE COURT:  Yes.
11           MR. TUCKER:  First, I just want to make a record,
12   Your Honor, that today defendants met with their attorneys in
13   a joint defense meeting in the courthouse.
14           THE COURT:  Yes.
15           MR. TUCKER:  Also, we have provided what I
16   understand to be the balance of 3500 material that's
17   disclosable for the two witnesses who will be deposed overseas
18   in the coming weeks.  In addition, and in an abundance of
19   caution, and in light of our discussions last week with
20   respect to the Curcio proceedings for the witness, the
21   government has turned over 302s and notes associated with that
22   witness.  We've turned them over on hard copy form and at
23   Ms. Kellman's request we've provided them in electronic form
24   as well, as well as for another cooperating witness the
25   government anticipates calling at trial.  So a large portion

1  of the government's 3500 has now been disclosed approximately
2  three months before the commencement of trial in this matter.
3          I understand the Court has requested copies of this
4  3500 as well, in anticipation of the depositions.
5          THE COURT: Yes.
6          MR. TUCKER: The parties are working on that and
7  Your Honor will have that well in advance. If it's all right
8  with the Court, I'll just run through my list of things that I
9  need to check off with the upcoming depositions?
10         THE COURT: Yes.
11         MR. TUCKER: So the next relates to the deposition
12 rules. The rules --
13         MS. KELLMAN: I just notice, Judge, that the
14 interpreter is not interpreting at all for any of the
15 proceedings. So I don't know if that's --
16         THE COURT: Why is that?
17         THE INTERPRETER: I have interpreted. Maybe the
18 attorney doesn't have the time to watch me all the time, but I
19 do interpret.
20         MS. KELLMAN: I haven't seen any interpretation,
21 that's why I raised it.
22         THE COURT: All right, let me ask. You're there for
23 Mr. Ahmed and Mr. Yusuf, interpret what I'm saying.
24         Mr. Ahmed and Mr. Yusuf, have you understood what
25 has been said during this hearing?

1        THE INTERPRETER:  He's speaking in a very low voice.
2   He says it would be better if you all would try to speak up a
3   little.
4        MR. TUCKER:  I will speak up, Your Honor.
5        The COURT:  Thank you.
6        MR. TUCKER:  I apologize.  I think that's the first
7   time that's ever been a criticism.  I usually talk too fast.
8        THE COURT:  Well, you talk too fast also.
9        MR. TUCKER:  I'll work on everything, Your Honor.
10       So the first point, Your Honor, relates to the
11   agreement among the parties regarding the conduct for the
12   depositions.
13       THE COURT:  Yes.
14       MR. TUCKER:  The parties have conferred and we've
15   crafted a way to preserve certain objections, while requiring
16   other objections be made contemporaneously during the
17   deposition.
18       THE COURT:  Yes.
19       MR. TUCKER:  That agreement has been formalized in
20   writing and counsel for all the parties have signed.  And so
21   I've presented that to Your Honor's deputy, so that the Court
22   can so order, it if it is acceptable to the Court.  And I can
23   answer any questions the Court has.
24       THE COURT:  All right, I'm just going to ask you
25   just for the record, Ms. Kellman, this is your signature

```
                         Proceedings                          6
```

1  agreeing?
2              MS. KELLMAN:  Yes, Your Honor, it is.
3              THE COURT:  And Mr. DeMarco signed.  Are you aware?
4              MR. COMMISSIONG:  I signed, Your Honor.
5              THE COURT:  Oh, Mr. Commissiong.
6              MR. COMMISSIONG:  I know, that is my handwriting.
7              THE COURT:  I wish you had underlined your name
8  because I -- all right, this is your signature --
9              MR. COMMISSIONG:  It is my signature.
10             THE COURT:  -- Mr. Commissiong?
11             MR. COMMISSIONG:  Yes.
12             THE COURT:  And, Mr. Stern?
13             MR. STERN:  I have signed it, yes.
14             THE COURT:  All right.  And I will sign also.
15             All right, I've seen the agreement regarding the
16 conduct of depositions.
17             MR. TUCKER:  Thank you, Your Honor.
18             Your Honor, the next matter relates to the method in
19 which the witnesses will be sworn in.  Witnesses at both of
20 the locations will be sworn in in a manner consistent with
21 local law, so that perjury or an analog of perjury will
22 attach.  I know that we've had an opportunity to confer with
23 counsel for the parties, and my understanding is that counsel
24 for all three defendants will waive any objection pursuant to
25 Rule 603 regarding oaths for witnesses and agree that the

1  local oath will be sufficient for that purpose.
2          MR. STERN:  That is correct.
3          MS. KELLMAN:  That is correct.
4          THE COURT:  Mr. Commissiong?
5          MR. COMMISSIONG:  Yes, Your Honor.
6          THE COURT:  Thank you.
7          MR. TUCKER:  Your Honor, the next matter for
8  logistics relates to the production of the defendants for
9  purposes of observing and participating in the depositions.
10         THE COURT:  Yes.
11         MR. TUCKER:  As the Court knows, or probably knows,
12 the depositions on the Brooklyn end will take place at the
13 U.S. Attorney's office.  We will be providing a location where
14 the local counsel will be able to sit with the defendants.
15         THE COURT:  Yes.
16         MR. TUCKER:  And the deposition will be live
17 video-streamed so they'll be able to see the, you know,
18 televised image of the witness who's being deposed and,
19 obviously, be able to hear the testimony.  They'll be able to
20 confer with local counsel.  And we've made arrangements so
21 that local counsel will be able to communicate via phone with
22 the lawyers who are overseas, so that there can be
23 coordination regarding strategy and things of that nature.
24         THE COURT:  All right.
25         MR. TUCKER:  The depositions, we are still

1  finalizing times and locations, although with each passing day
2  we're able to be more and more precise.  As Your Honor knows,
3  there are aspects of this that are outside the U.S.
4  government's control because the witnesses are in the custody
5  of foreign governments.  It's the government's understanding
6  that the first deposition will take place overnight between
7  Sunday night and Monday morning this week.  So we're expecting
8  to start overseas at 9 a.m. Africa time.
9             THE COURT:  Yes.
10            MR. TUCKER:  Which would be 1 a.m. New York time,
11 Monday morning.  And that the deposition would continue until
12 4 p.m. Africa time, which would corollate to 8 a.m. Brooklyn
13 time.  That deposition window --
14            THE COURT:  Yes.
15            MR. TUCKER:  -- is very -- it's very -- it seems to
16 be largely inflexible is the information that we've been
17 provided by the foreign government, that that's going to be a
18 fixed window for the deposition.  This is one of the reasons
19 that the government requested the status conference today so
20 that we could raise this issue with the Court, make sure the
21 Court understands where our window is, and this would be an
22 opportunity for the Court to advise the defendants that in the
23 event that they decline to be produced for that deposition,
24 they will waive their opportunity to observe and participate
25 in that deposition.

Proceedings                                                             9

1        THE COURT:  They cannot, pursuant to the rule,
2   decline to be produced unless they do so in writing.  And if
3   they wish to do so in writing, then that's fine, but I want
4   use of force orders prepared.  I don't think we're going to
5   need them, but the rule, itself, says that the defendant must
6   be produced at the deposition and keep the defendant in the
7   witness' presence during the examination unless the defendant,
8   A, waives in writing the right to be present or, B, persists
9   in disruptive conduct justifying exclusion after being warned
10  by the Court that disruptive conduct will result in the
11  defendant's exclusion.
12       So I don't think we're going to need it, but because
13  of this window, I want you to prepare use of force orders for
14  each day because the rule says must.
15       MR. TUCKER:  I understand, Your Honor.  I will
16  prepare those force orders and present them to the Court for
17  Your Honor's consideration.
18       THE COURT:  All right.
19       MR. TUCKER:  Assuming what I think we all hope that
20  they will not be necessary --
21       THE COURT:  No, I don't think.
22       MR. TUCKER:  -- the FBI, pursuant to the proposed
23  orders that I handed up to Your Honor's deputy earlier, will
24  transport the defendants from the jail facility to the office
25  of the U.S. Attorney's office for purposes of those

1  depositions.  And I had an opportunity to show those proposed
2  take-out orders to counsel, and they've been presented for
3  Your Honor's signature.
4          MR. STERN:  Judge, we understand it's necessary for
5  the FBI to do this because it's not during court hours.
6          THE COURT:  Yes.
7          MR. STERN:  But we want it to be clear and want you
8  to order the government or through the government the FBI not
9  to speak with our clients during this transportation.  Our
10 clients are represented.  They are not waiving their right to
11 be silent, and I want to be sure that there's not later some
12 claim that they had conversations, which were in any way
13 inculpatory.
14         THE COURT:  Well, of course, Mr. Tucker and the
15 government knows that that is not permissible.
16         MR. TUCKER:  I do, Your Honor, and I know that the
17 agents know that too, but in an abundance of caution we will
18 convey that message, once again, to make certain that everyone
19 understands.
20         MS. KELLMAN:  Your Honor, I just want to join in
21 that request, but also mention to the Court that the reason
22 this came up was last week we agreed voluntarily, without the
23 need for subpoena, to have the government send FBI agents to
24 visit with our clients and photograph them.  And we have
25 learned -- and our clients were cooperative through the

1  process.  We have learned from our clients that they were
2  questioned during that interview -- during that photographic
3  session, and they were asked specific questions that relate to
4  the testimony about scars and tattoos and the like.  So it's
5  for that reason that, while the agents should know better,
6  and, of course, the government, we know, knows better --
7            THE COURT:  Yes.
8            MS. KELLMAN:  -- but we know that that has happened
9  just last week, so we are asking the Court to order that
10 nobody speak to our clients.
11           THE COURT:  Well, I've already ordered that.
12           Anything else?
13           MR. TUCKER:  So, Your Honor, I think that brings us
14 to my last point.  So now understanding that we will acquire
15 force orders and then the FBI will make arrangements to
16 attempt to transport the defendants early enough such that if
17 there is an issue, the Bureau of the Prisons and Marshals and
18 FBI will be able to safely deploy, if necessary, the force to
19 transport the defendants.  Again, hopefully, this won't happen
20 because the most important thing, I think from everyone's
21 perspective, frankly, is that we're able to commence the
22 depositions on time.
23           THE COURT:  Yes.
24           MR. TUCKER:  Because we want to make certain that
25 everyone has adequate time to conclude their examinations.

Proceedings                                                          12

1   The government is seeking a little bit of guidance from the
2   Court in the event that court intervention is necessary.  I'm
3   recognizing that these are off hours.  I wanted to get some
4   guidance from, Your Honor, if we should contact Your Honor's
5   chambers or however --
6              THE COURT:  I will be there.
7              MR. TUCKER:  Your Honor will be attending the
8   deposition at the U.S. Attorney's office?
9              THE COURT:  Yes.
10             MR. TUCKER:  That resolves that issue, Your Honor.
11             THE COURT:  All right, anything else from the
12  government?
13             MR. TUCKER:  I don't believe so.  That's it.  The
14  government will get you the proposed force orders and your
15  3500 in the next couple days.
16             THE COURT:  All right, Mr. Stern.
17             MR. STERN:  This is really ancillary to what we're
18  talking about now, but the government, as you were just told,
19  has taken photographs of scars or tattoos that our clients
20  have.  We would like copies of those photographs.  And, I
21  assume the government will, I don't mean they've refused to do
22  it at all, but I'm just putting on the record we want copies
23  of those.  And we want to know all of their body parts that
24  were examined because if there are areas that don't have scars
25  or tattoos, we want to know that as well so we won't be having

```
                        Proceedings                      13
```

1  to have them display themselves in court.
2          What I mean by that, if they examined their whole
3  leg and took a picture of every scar on their leg or their
4  whole arm to photograph every scar on their arm, we just want
5  to know those too.  And that's a discovery request, but one I
6  make now just because it came up.
7          THE COURT:  All right.
8          MR. TUCKER:  Your Honor, we'll certainly turn over
9  everything that's appropriate to be disclosed.
10         MR. STERN:  Thank you.
11         THE COURT:  Is there anything else?
12         MS. KELLMAN:  No, nothing.
13         THE COURT:  Mr. Commissiong.
14         MR. COMMISSIONG:  Yes, Your Honor.
15         Last week I met with Mr. Hashi and Mr. Hashi raised
16 an issue with me.  He stated that he sent a letter to Your
17 Honor informing Your Honor that he no longer wants Mr. DeMarco
18 and myself to represent him.
19         THE COURT:  I did not receive any such letter.
20         MR. COMMISSIONG:  And I spoke to Veronica, it
21 probably just didn't make its way to the Court.  I thought
22 that it was necessary to raise this issue at this -- at this
23 court conference.
24         THE COURT:  Well, I haven't received the letter.  I
25 will look for it or Mr. Hashi can write to me again.  And if

                    SAM      OCR      CRR      RPR

Proceedings                                                    14

1    there's an issue, I'll schedule a hearing for March 2nd.  We
2    have a scheduled appearance on that date and we'll do that
3    after.
4              DEFENDANT HASHI:  Can I address the Court, please?
5              THE COURT:  Yes, Mr. Hashi.
6              DEFENDANT HASHI:  Last week I sent you, it was on
7    Monday, and I was going to send you another letter today, but
8    this morning I was told that I had court appearance.  So
9    that's why I didn't send you that letter.
10             THE COURT:  I did not receive a letter from you.
11             DEFENDANT HASHI:  I've had a few issues with my
12   lawyers for the past --
13             THE COURT:  I'm not discussing that now.  I said I
14   will have a hearing and, hopefully, I'll have your letter and
15   you said that you were going to send another letter.  So I'll
16   wait for that.
17             DEFENDANT HASHI:  I would have liked that we talk
18   about this before depositions.
19             THE COURT:  No, we're not talking about it until the
20   hearing on March 2nd.
21             DEFENDANT HASHI:  Which is after the depositions.
22             THE COURT:  March 2nd we have a hearing on your
23   request, once I receive it.
24             DEFENDANT HASHI:  Judge, my lawyers, I do not want
25   them to represent me during this trip and I don't want them to

Proceedings                                                    15

1  cross-examine these witnesses.
2              THE COURT:  I have scheduled a hearing --
3              DEFENDANT HASHI:  I don't want --
4              THE COURT:  Mr. Hashi, I have scheduled a hearing
5  March 2nd.  We are adjourned if there is nothing else.
6              DEFENDANT HASHI:  Okay.
7              MR. TUCKER:  Thank you, Your Honor.
8              DEFENDANT HASHI:  So I come once to the court
9  appearance and you don't talk to me?  I don't get to talk?
10             THE COURT:  I anticipated you will be sending me the
11 letter.
12             DEFENDANT HASHI:  I've been sitting here two years
13 and a half, I've never spoke.  I've never, ever spoke.  Let me
14 speak.
15             THE COURT:  You may send the letter, Mr. Hashi.
16             THE DEFENDANT:  I never knew that you didn't receive
17 it, though.  Thank you very much.
18             THE COURT:  Thank you.
19             DEFENDANT HASHI:  The first time I speak and you do
20 this, right?  It's an embarrassment.  The defense lawyers --
21             THE COURT:  All right, if there's nothing else,
22 we're adjourned.
23             MR. TUCKER:  Thank you, Your Honor.
24                      (Matter adjourned.)
25

SAM    OCR    CRR    RPR
I certify the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
/s/  Stacy A. Mace    February 18, 2015