Jane Simkin Smith<br>
Attorney At Law<br>
P.O. Box 1277<br>
Millbrook, New York 12545<br>
845 724 3415<br>
Fax 888-391-5018<br>
jssmith1@optonline.net

January 27, 2016

<u>By Email and ECF</u>

Jaime Turton
United States Probation Officer
United States Department of Probation
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Re: United States v. Ahmed, et al. 12 CR 661 (S-2) (JG)

Dear Mr. Turton:

Below find proposed changes to the PSR about which the government and defense counsel are in agreement. We have also included certain requested changes by the defendants about which the government takes no position. Pursuant to the Court's directive during sentencing on January 15, 2016, we request that you make these changes to the final PSRs for Mr. Ahmed and Mr. Yusuf. While some of these changes are individual to either Mr. Ahmed or Mr. Yusuf, we ask, in the interest of continuity, that the changes be made to both PSRs.  We also ask, also pursuant to the Court's agreement at sentencing, that pages 1-8 of the sentencing transcript be attached to the PSR. (The Court filed this portion of the transcript as an attachment to the judgments; ecf documents ## 343-1 and 346-1 are attached to this letter.)

**Joint Changes pertaining to both Ahmed and Yusuf:**

1. The defendants were not formally extradited to the United States. For this reason, we request that any reference to the defendants' extradition be removed from the PSRs and replaced with the following: "*arrested by the United States government and transferred in custody.*" See Joint Objections, PSR p. 1, 2, ¶¶ 83 (Yusuf and Ahmed); ¶ 84 (Hashi), ¶ 93 (Yusuf), ¶ 95 (Ahmed), ¶ 98 (Hashi), ¶ 96 (Ahmed).

2. The defendants' race or ethnicity should not be described as African American and should instead be characterized as "*Black*" or "*Somali*."

3. Any reference to the time period of the offense should be consistent with the indictment as follows: "*In or about and between April 2008 and August 2012, both dates being approximate and inclusive...*" (*See e.g.* Ahmed PSR ¶¶ 1, 30.)

4. Any reference to the 2013 Westgate mall attack, which took place after the defendants were in custody in the United States, should be removed. (See e.g. Ahmed PSR ¶7.)

5. The government agrees that there is no evidence that the defendants participated in any beheadings, and we ask that ¶3 of the PSR be amended as follows: "Al-Shabaab frequently beheaded TFG and AMISOM fighters, to instill fear in their adversaries, *however there is no evidence to suggest that any of the defendants participated in any beheadings*."

6. With respect to ¶6, which describes the role of foreign fighters, the parties ask that the language be modified as follows: "*that some 'foreign fighters,' with their foreign passports, were given combat training in Somalia and certain of those foreign fighters were then sent elsewhere in support of external terrorist plots against Western countries and their allies in the region. While the defendants were al-Shabaab foreign fighters, there is no evidence that the defendants participated in or otherwise supported any external terrorist plots against Western countries and their allies in the region.*"

7. With respect to ¶11, the parties ask that Probation replace the word "group" with "number" in the phrase "growing group of young men in Sweden." The government also asks that Probation fix the location of Rinkeby, which is "*a suburb of Stockholm*" and not "located in the Northern part of the country" and asks that ¶ 11 should be revised to include the fact that many of the young men referred to in this paragraph also lived in "*Gothenburg, the second largest city in Sweden.*

8. The parties agree that Yusuf's alleged alias, "Mohammed Abdulkadir," should be removed from the PSR.

9. With respect to the paragraph pertaining to Mr. Hashi's trip to Damascus in May 2007 (¶41 in Ahmed's PSR), the parties ask that the following parenthetical that identifies the names "Ismail" and "Yusef" as "aliases of Ahmed and Mohamed Yusuf, respectively" be removed. We further request the inclusion of the following sentence: *There is no evidence that Mohamed Yusuf or Ali Yasin Ahmed were in Syria at the same time as Mr. Hashi.*

10. ¶14 of Ahmed and Yusef's PSRs states that Ahmed and Yusef "later received advanced "commando" training at another camp." We request that this language be deleted and replaced with the following: "Ahmed and Yusuf later received advanced "commando" training *in a separate part of the Buled Gadud training camp.*"

**Joint Changes pertaining to Yusuf:**

11. We request that Yusuf's name be removed from the second sentence of ¶ 19 of the PSR.

**Changes requested by Yusuf on which the government takes no position:**

12. Yusuf has requested modifications to certain "Offender Characteristics" set out in ¶¶ 82, 83, 89, and 92 of the PSR. Specifically:

- ¶ 82: As set forth in this paragraph, the name of Mr. Yusuf's wife, the ages of Mr. Yusuf's children, and the time he can speak with his wife are incorrect. The PSR should read, "*On August 21, 2009, the defendant married Kathar Mohamed Moulin (age 23) in Somalia*"...."*Shueyb Mohamed Yusuf (age 5)*" and "*Khadeja Yusuf (age 4)*." The last sentence should read: "*Mr. Yusuf can speak with his wife once per month for 15 minutes. (In addition, he is permitted to have one 15-minute call per month with his family in Sweden.)*"

- ¶ 83: "…From 2008 until his arrest for the instant offense on August 5, 2012, he resided in Mogadishu, Somalia, with his second wife and children." The PSR should read: "*Mr. Yusuf resided in Mogadishu for about one year. Beginning in 2010, he resided in Kismayo and then lived in Merca with his wife until 2012.*"

- ¶ 89: "…Despite his prolonged stay in this housing status, he has displayed no evidence of depression or suicidal ideations, and appears to be adequately adjusting to the placement…." We ask that this paragraph be stricken. The psychological reviews at the MCC SHU are cursory at best and do not reliably measure the long-term and devastating effects of prolonged isolation in solitary confinement.

- ¶ 92: Mr. Yusuf is not fluent in Arabic

**Changes requested by Ahmed on which the government takes no position:**

13. Ahmed objects to the spelling of "Gohro" in PSR ¶ 77. The correct spelling is "Johro".

14. Ahmed objects to various issues in PSR ¶¶ 82, 88, 94, and 97, regarding his familial relationships, linguistic capability, and reading privileges in the jail. Specifically:

- ¶ 82: (1) "June" should be May. (2) "18-month courtship" should be *5-month courtship*. (3) Mr. Ahmed's son's name is *Yazid Ali Yasin*, and his daughter's name was *Faduma Ali Yasin*.

- ¶ 88: "he can only read a new book once (because the book is destroyed)" It's not that Mr. Ahmed can only read each book once – he can read the SAME book (and often does) as many times as he likes. It's just that he can't read any books that aren't brand new, and as result, has very limited access to books. Once he (or any other SAMS inmate) is done with a book, that book is destroyed and cannot be used by anyone else. We ask that the paragraph be amended as follows: "As a result, he is confined to his cell all day, he cannot speak to other inmates, his food is brought to his cell, *he has limited access to reading materials, as he is only permitted to read new*

> *books periodicals and newspapers, which must be sent to him by his lawyers or family from approved vendors (and are destroyed once he is finished with them), and his telephone privileges are limited to once per month for 30 minutes. Prior to September of 2014, he was permitted only one 15-minute call to his family per month."*

- ¶ 94: Mr. Ahmed does not speak Swahili.

    Thank you for your kind assistance with this important matter.  Please provide the parties with the revised PSRs at your earliest convenience.

                      Sincerely,

                      Jane Simkin Smith
                      David Stern
                      Attorneys for MOHAMED YUSUF

                      Susan G. Kellman
                      Sarah Kunstler
                      Ezra Spilke
                      Attorneys for ALI YASIN AHMED

cc: Counsel of Record via email

1

1  THE CLERK: United States versus Ahmed, et al.
2  MR. ARIAIL: Good afternoon, Your Honor. Shreve
3  Ariail, Seth DuCharme and Richard Tucker for the United
4  States.
5  THE COURT: Good afternoon.
6  MS. KELLMAN: Good afternoon. Susan Kellman and
7  Sarah Kunstler for Ali Ahmed who is in the courtroom.
8  THE COURT: Yes.
9  MR. STERN: Good afternoon. David Stern and Jane
10  Smith and we're assisted by Mayerlin Ulerio for Mohamed Yusuf.
11  THE COURT: Good afternoon.
12  THE PROBATION OFFICER: Jaime Turton from Probation.
13  THE COURT: Yes. Thank you for being here. Thank
14  you for your work on the case.
15  Everyone can have a seat.
16  Okay. There is a presentence report and a couple of
17  addenda. Let me say at the outset how impressed I am with the
18  written advocacy in connection with this sentencing. These
19  papers are fabulous, all around. Thank you so much for them.
20  They are very useful.
21  Have you been over, Ms. Kellman and Mr. Stern, have
22  the two of you seen the presentence report and the two addenda
23  to it?
24  MS. KELLMAN: Yes, Your Honor.
25  MR. STERN: Yes.

Case 1:12-cr-00661-JG-LB   Document 352-1   Filed 01/27/16   Page 6 of 20 PageID #: 3558
Case 1:12-cr-00661-JG-LB   Document 343-1   Filed 01/20/16   Page 2 of 8 PageID #: 3515

2

            THE COURT:  Okay.  Gentlemen, Mr. Yusuf and
Mr. Ahmed, let me address you individually.
            Have you both had an opportunity to review these
documents?
            Mr. Ahmed?
            DEFENDANT YUSUF:  Yes.
            THE COURT:  Mr. Yusuf?
            DEFENDANT YUSUF:  Yes.
            THE COURT:  You said yes to both.
            MR. ARIAIL:  I think Mr. Ahmed didn't answer.
            THE COURT:  Mr. Ahmed, have you seen these documents
or had them translated for you?
            DEFENDANT AHMED:  Yes, I have.
            THE COURT:  Okay.  And have you had enough time to
go over them with your lawyers, Mr. Ahmed?
            DEFENDANT AHMED:  Yes.
            DEFENDANT YUSUF:  Yes.
            THE COURT:  Okay.  There's a lot of back and forth
with objections to the presentence report.  Let me share with
you my sense that this is a really difficult case.  There are
some very difficult issues to address and I think that these
issues lie at the heart of the sentence determination.
            One is the extent to which we have a situation where
one person's terrorism is another person's freedom fighting.
Another issue is the significance of the conditions of

Case 1:12-cr-00661-JG-LB   Document 352-1   Filed 01/27/16   Page 7 of 20 PageID #: 3559
Case 1:12-cr-00661-JG-LB   Document 343-1   Filed 01/20/16   Page 3 of 8 PageID #: 3516

3

1  confinement when they were first taken into custody in Africa.
2  Yet another is the conditions of confinement the last three
3  years here and going forward and those are all important
4  issues.  I want to hear oral advocacy on those as well.  And
5  then, and this is just an outcropping.  I'm not being
6  critical.  It is a result --
7          Let's swear the interpreter.
8          THE CLERK:  Magna, can you rise and raise your right
9  hand, please.
10         (Interpreter sworn.)
11         THE CLERK:  Please state your name for the record.
12         THE INTERPRETER:  Magna Czagany.
13         THE CLERK:  Thank you.
14         THE COURT:  One result of this careful, thorough
15 advocacy is a lot of back and forth on issues that I don't
16 really regard as necessary.  They don't really affect the
17 sentencing or I wouldn't consider them in any event.  You
18 know, it got down to the difference between statements of
19 something happened in late 2008 as opposed to December of
20 2008.  Good for you for fleshing that all out and bringing
21 those to the surface, but I don't want to get down in those
22 weeds.
23         It struck me in broad strokes that the objection
24 to -- it didn't just strike me, I'm ruling on this now so you
25 know -- but the objection to paragraphs 2 through 9, for

4

1 example, I am going to overrule that. I think that
2 information is properly in the presentence report.
3     The information about Hashi, these are different
4 numbered paragraphs depending on which two presentencing
5 reports you are looking at, but the paragraph on the
6 activities of Hashi and others, Sakr, I'm sure I'm
7 mispronouncing them, Berjawi, I understand there is an
8 objection to the inclusion of this information, but I am
9 overruling the objection.
10     To the extent that that information might prejudice
11 the defendants, I understand that the inclusion of a
12 statement, for example, a statement that there's no evidence
13 that any of these defendants was involved in beheadings, I
14 think, recognizing you have your objection, I think those
15 statements -- there is another -- sorry, but I don't have the
16 notes that I made upstairs before me. The government
17 mentions, for example, on page nine of its submission a
18 modification with regard to the inclusion of a narrative about
19 foreign fighters. I think these ameliorative measures do the
20 trick. I don't regard that information as bearing on the
21 sentence. I think the heart of the sentence are the three
22 issues that I've described for you.
23     So that's a long-winded preface to asking defense
24 counsel, and thank you for your reply submission, what, in
25 light of the agreements that you have with regard to the

Case 1:12-cr-00661-JG-LB   Document 352-1   Filed 01/27/16   Page 9 of 20 PageID #: 3561
Case 1:12-cr-00661-JG-LB   Document 343-1   Filed 01/20/16   Page 5 of 8 PageID #: 3513

5

presentence report, do you really think I need to resolve here before I have argument about the appropriate sentence?

Do you understand the question?

MS. KELLMAN: Your Honor, I think at least with respect to Mr. Ahmed, I would say that the answer is if what Your Honor is focusing on, and I think correctly, are the first three issues that you highlight, then I'm happy to restrict my comments to that and I, I have to say I think that as advocates, we felt the need to respond to everything.

THE COURT: I understand.

MS. KELLMAN: But I think the Court appropriately highlights the concerns that affect the sentence in this case and I'm happy to abide by that.

THE COURT: And just to flesh it out a little bit, with respect to the heart of the case, I don't think either side is right necessarily that, you know, it's not irrelevant that the freedom fighting was done through the vehicle of al-Shabaab. Some inferences can be drawn that are adverse to the defendants. At the same time, simply joining al-Shabaab doesn't necessarily carry with it all that inferential impact that the government wants it to carry. I mean, we will argue about that. But these more particularized objections to the presentence report I don't really find necessary for resolution.

Put another way, under Rule 32, they don't affect

Case 1:12-cr-00661-JG-LB   Document 352-1   Filed 01/27/16   Page 10 of 20 PageID #: 3562
Case 1:12-cr-00661-JG-LB   Document 343-1   Filed 01/20/16   Page 6 of 8 PageID #: 3513

6

```
 1    the sentence in my judgment so I don't intend to address them.
 2              Mr. Stern, Ms. Smith, do you want to be heard?
 3              MR. STERN:  Can we just have one second?
 4              (Pause.)
 5              MR. STERN:  I think that's fine with us, Judge.
 6    What we would like then is that fact that you just said, they
 7    don't affect your sentence, be put in the presentence report.
 8    Of course these reports follow them wherever they go so to
 9    some extent, I agree with you.  Some of these things became
10    quibbles after a while, but we would like it then to be
11    reflected, wherever they go, the sentence was based on the
12    things we discussed in court here today and was not influenced
13    by the things you're suggesting don't influence you.
14              THE COURT:  All right.  Mr. Ariail?
15              MR. ARIAIL:  Your Honor, in terms of the objections,
16    I think we tried, we tried our best to come to agreement where
17    we could.  I think though there are two particular areas I
18    just want to make sure that I understand Your Honor correctly
19    as saying you are considering which are the, without reference
20    to the paragraphs, the November 2008 intercepts or wiretaps
21    that were conducted in Sweden and also the later intercepts in
22    2009 and 2010.  I just want to make sure that those are, those
23    remain.  I don't think those specific paragraphs were
24    referenced and I assume Your Honor is considering those.
25              THE COURT:  I think those are properly before me for
```

7

1  what they're worth.  There is no objection to that, I take it.
2          MS. KELLMAN:  No, Your Honor.
3          Your Honor, one question, though.  In the
4  government's submission early on in this submission, they
5  speak to certain of our objections and they say that they
6  agree with the defense as to this, that, and the other thing,
7  for example, that they weren't involved in beheadings and
8  suicide bombings.
9          THE COURT:  Yes.
10         MS. KELLMAN:  It would seem that, to further
11 Mr. Stern's comments to the Court, that perhaps those comments
12 would also be incorporated into the presentence report again
13 because they'll follow the defendants.
14         THE COURT:  Absolutely.  And what I think is useful
15 is for -- I looked at these addenda, but, for example, the
16 clarifying statement regarding beheadings.  Everybody agrees
17 that should go in the presentence report.
18         Jamie, could you make those modifications?
19         THE PROBATION OFFICER:  Yes, Your Honor.
20         THE COURT:  And put your heads together with
21 Mr. Ariail, Mr. DuCharme, and Mr. Tucker and Mr. Turton and
22 let's make those revisions that are agreed upon.  I'm all for
23 that.  And then I think you ought to append a copy of the
24 transcript of this sentencing proceeding to the judgment.
25         Does anybody object to that?

8

```
1              MR. STERN:  No.
2              MS. KELLMAN:  No, Your Honor.
3              MR. ARIAIL:  No, Your Honor.
4              THE COURT:  All right.  Anything else with regard to
5    the presentence report that anybody needs addressed before we
6    talk about what the appropriate sentence will be?
7              From the government?
8              MR. ARIAIL:  No, Your Honor.
9              MS. KELLMAN:  No, Your Honor.
10             MR. STERN:  No.
```

1

```
 1              THE CLERK:  United States versus Ahmed, et al.
 2              MR. ARIAIL:  Good afternoon, Your Honor.  Shreve
 3   Ariail, Seth DuCharme and Richard Tucker for the United
 4   States.
 5              THE COURT:  Good afternoon.
 6              MS. KELLMAN:  Good afternoon.  Susan Kellman and
 7   Sarah Kunstler for Ali Ahmed who is in the courtroom.
 8              THE COURT:  Yes.
 9              MR. STERN:  Good afternoon.  David Stern and Jane
10   Smith and we're assisted by Mayerlin Ulerio for Mohamed Yusuf.
11              THE COURT:  Good afternoon.
12              THE PROBATION OFFICER:  Jaime Turton from Probation.
13              THE COURT:  Yes.  Thank you for being here.  Thank
14   you for your work on the case.
15              Everyone can have a seat.
16              Okay.  There is a presentence report and a couple of
17   addenda.  Let me say at the outset how impressed I am with the
18   written advocacy in connection with this sentencing.  These
19   papers are fabulous, all around.  Thank you so much for them.
20   They are very useful.
21              Have you been over, Ms. Kellman and Mr. Stern, have
22   the two of you seen the presentence report and the two addenda
23   to it?
24              MS. KELLMAN:  Yes, Your Honor.
25              MR. STERN:  Yes.
```

2

1    THE COURT:  Okay.  Gentlemen, Mr. Yusuf and
2    Mr. Ahmed, let me address you individually.
3            Have you both had an opportunity to review these
4    documents?
5            Mr. Ahmed?
6            DEFENDANT YUSUF:  Yes.
7            THE COURT:  Mr. Yusuf?
8            DEFENDANT YUSUF:  Yes.
9            THE COURT:  You said yes to both.
10           MR. ARIAIL:  I think Mr. Ahmed didn't answer.
11           THE COURT:  Mr. Ahmed, have you seen these documents
12   or had them translated for you?
13           DEFENDANT AHMED:  Yes, I have.
14           THE COURT:  Okay.  And have you had enough time to
15   go over them with your lawyers, Mr. Ahmed?
16           DEFENDANT AHMED:  Yes.
17           DEFENDANT YUSUF:  Yes.
18           THE COURT:  Okay.  There's a lot of back and forth
19   with objections to the presentence report.  Let me share with
20   you my sense that this is a really difficult case.  There are
21   some very difficult issues to address and I think that these
22   issues lie at the heart of the sentence determination.
23           One is the extent to which we have a situation where
24   one person's terrorism is another person's freedom fighting.
25   Another issue is the significance of the conditions of

Case 1:12-cr-00661-JG-LB   Document 352-1 Filed 01/27/16   Page 15 of 20 PageID #: 3567
Case 1:12-cr-00661-JG-LB   Document 346-1 Filed 01/20/16   Page 3 of 8 PageID #: 3533

3

1  confinement when they were first taken into custody in Africa.
2  Yet another is the conditions of confinement the last three
3  years here and going forward and those are all important
4  issues. I want to hear oral advocacy on those as well. And
5  then, and this is just an outcropping. I'm not being
6  critical. It is a result --
7          Let's swear the interpreter.
8          THE CLERK: Magna, can you rise and raise your right
9  hand, please.
10         (Interpreter sworn.)
11         THE CLERK: Please state your name for the record.
12         THE INTERPRETER: Magna Czagany.
13         THE CLERK: Thank you.
14         THE COURT: One result of this careful, thorough
15 advocacy is a lot of back and forth on issues that I don't
16 really regard as necessary. They don't really affect the
17 sentencing or I wouldn't consider them in any event. You
18 know, it got down to the difference between statements of
19 something happened in late 2008 as opposed to December of
20 2008. Good for you for fleshing that all out and bringing
21 those to the surface, but I don't want to get down in those
22 weeds.
23         It struck me in broad strokes that the objection
24 to -- it didn't just strike me, I'm ruling on this now so you
25 know -- but the objection to paragraphs 2 through 9, for

4

1 example, I am going to overrule that. I think that
2 information is properly in the presentence report.
3 The information about Hashi, these are different
4 numbered paragraphs depending on which two presentencing
5 reports you are looking at, but the paragraph on the
6 activities of Hashi and others, Sakr, I'm sure I'm
7 mispronouncing them, Berjawi, I understand there is an
8 objection to the inclusion of this information, but I am
9 overruling the objection.
10 To the extent that that information might prejudice
11 the defendants, I understand that the inclusion of a
12 statement, for example, a statement that there's no evidence
13 that any of these defendants was involved in beheadings, I
14 think, recognizing you have your objection, I think those
15 statements -- there is another -- sorry, but I don't have the
16 notes that I made upstairs before me. The government
17 mentions, for example, on page nine of its submission a
18 modification with regard to the inclusion of a narrative about
19 foreign fighters. I think these ameliorative measures do the
20 trick. I don't regard that information as bearing on the
21 sentence. I think the heart of the sentence are the three
22 issues that I've described for you.
23 So that's a long-winded preface to asking defense
24 counsel, and thank you for your reply submission, what, in
25 light of the agreements that you have with regard to the

5

presentence report, do you really think I need to resolve here before I have argument about the appropriate sentence?

Do you understand the question?

MS. KELLMAN: Your Honor, I think at least with respect to Mr. Ahmed, I would say that the answer is if what Your Honor is focusing on, and I think correctly, are the first three issues that you highlight, then I'm happy to restrict my comments to that and I, I have to say I think that as advocates, we felt the need to respond to everything.

THE COURT: I understand.

MS. KELLMAN: But I think the Court appropriately highlights the concerns that affect the sentence in this case and I'm happy to abide by that.

THE COURT: And just to flesh it out a little bit, with respect to the heart of the case, I don't think either side is right necessarily that, you know, it's not irrelevant that the freedom fighting was done through the vehicle of al-Shabaab. Some inferences can be drawn that are adverse to the defendants. At the same time, simply joining al-Shabaab doesn't necessarily carry with it all that inferential impact that the government wants it to carry. I mean, we will argue about that. But these more particularized objections to the presentence report I don't really find necessary for resolution.

Put another way, under Rule 32, they don't affect

6

1   the sentence in my judgment so I don't intend to address them.
2           Mr. Stern, Ms. Smith, do you want to be heard?
3           MR. STERN:  Can we just have one second?
4           (Pause.)
5           MR. STERN:  I think that's fine with us, Judge.
6   What we would like then is that fact that you just said, they
7   don't affect your sentence, be put in the presentence report.
8   Of course these reports follow them wherever they go so to
9   some extent, I agree with you.  Some of these things became
10  quibbles after a while, but we would like it then to be
11  reflected, wherever they go, the sentence was based on the
12  things we discussed in court here today and was not influenced
13  by the things you're suggesting don't influence you.
14          THE COURT:  All right.  Mr. Ariail?
15          MR. ARIAIL:  Your Honor, in terms of the objections,
16  I think we tried, we tried our best to come to agreement where
17  we could.  I think though there are two particular areas I
18  just want to make sure that I understand Your Honor correctly
19  as saying you are considering which are the, without reference
20  to the paragraphs, the November 2008 intercepts or wiretaps
21  that were conducted in Sweden and also the later intercepts in
22  2009 and 2010.  I just want to make sure that those are, those
23  remain.  I don't think those specific paragraphs were
24  referenced and I assume Your Honor is considering those.
25          THE COURT:  I think those are properly before me for

7

what they're worth.  There is no objection to that, I take it.

MS. KELLMAN:  No, Your Honor.

Your Honor, one question, though.  In the government's submission early on in this submission, they speak to certain of our objections and they say that they agree with the defense as to this, that, and the other thing, for example, that they weren't involved in beheadings and suicide bombings.

THE COURT:  Yes.

MS. KELLMAN:  It would seem that, to further Mr. Stern's comments to the Court, that perhaps those comments would also be incorporated into the presentence report again because they'll follow the defendants.

THE COURT:  Absolutely.  And what I think is useful is for -- I looked at these addenda, but, for example, the clarifying statement regarding beheadings.  Everybody agrees that should go in the presentence report.

Jamie, could you make those modifications?

THE PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  And put your heads together with Mr. Ariail, Mr. DuCharme, and Mr. Tucker and Mr. Turton and let's make those revisions that are agreed upon.  I'm all for that.  And then I think you ought to append a copy of the transcript of this sentencing proceeding to the judgment.

Does anybody object to that?

8

```
 1            MR. STERN:  No.
 2            MS. KELLMAN:  No, Your Honor.
 3            MR. ARIAIL:  No, Your Honor.
 4            THE COURT:  All right.  Anything else with regard to
 5   the presentence report that anybody needs addressed before we
 6   talk about what the appropriate sentence will be?
 7            From the government?
 8            MR. ARIAIL:  No, Your Honor.
 9            MS. KELLMAN:  No, Your Honor.
10            MR. STERN:  No.
```